SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"); the Office of Workers' Compensation Programs of the Department of Labor ("DOL-OWCP"), which administers the Federal Employees Compensation Act ("FECA") Program on behalf of federal employees including employees of the U.S. Postal Service ("USPS"); the Defense Health Agency ("DHA"), acting on behalf of the TRICARE Program; the Office of Personnel Management ("OPM"), which administers the Federal Employees Health Benefits Program ("FEHBP"); and the Department of Veterans Affairs, which administers the Veterans Health Administration Program (collectively, the "United States"); Health Quest Systems, Inc., Health Quest Medical Practice, P.C. ("HQMP"), Health Quest Urgent Medical Care Practice, P.C., ("HQUC") (collectively "Health Quest"); Putnam Health Center ("PHC"); and Relators Gregory Folta, Timothy Cleary, John Betaudier, and Carolyn Carroll (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.    Health Quest Systems, Inc. is a not for profit corporation headquartered in Lagrangeville, New York. HQMP and HQUC are physician practices licensed in New York. PHC is a hospital separately established under New York law and is located in Carmel Hamlet, New York. Vassar Brothers Hospital, d/b/a Vassar Brothers Medical Center ("VBMC") is a hospital separately established under New York law and is located in Poughkeepsie, NY. Health Quest Home Health Care, Inc. ("HQHC") is a wholly owned subsidiary of Health Quest Systems, Inc. located in Poughkeepsie, New York.

B.       On April 2, 2015, Gregory Folta filed a *qui tam* action under seal in the United States District Court for the Northern District of New York captioned *United States of America and State of New York ex rel. John Doe v. Health Quest Systems, Inc. and Health Quest Medical Practice, P.C.*, 1:15-cv-396 (TJM/DEP), pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b) ("Health Quest 1"). Folta alleged that Health Quest violated the FCA by: (a) billing Medicare and Medicaid for higher levels of office visit services than were actually provided (also known as "upcoding"); (b) billing Medicare for Annual Wellness Visits ("AWVs") that were not fully performed in the required manner; (c) billing Medicare and Medicaid for *locum tenens* physician services that were performed by ineligible physicians; (d) billing Medicare and Medicaid for physician assistant ("PA") services where the supervising physician was overseeing an excessive number of PAs; (e) billing Medicare and Medicaid for nurse practitioner ("NP") and PA services as "incident to" a physician's services when the physician did not directly supervise the NPs or PAs; (f) falsifying the status of unsigned medical records; (g) engaging in referral and employment compensation business practices that violated the Anti-Kickback Statute ("AKS") and the Stark Law; and, (h) retaining overpayments that were received through the foregoing conduct. The United States will intervene in Health Quest 1 to the extent that Folta's complaint alleges upcoding, improper billing for AWVs, improper use of *locum tenens* billing, and improper use of "incident to" billing.

C.       On January 21, 2016, Timothy Cleary filed a *qui tam* action under seal in the United States District Court for the Northern District of New York captioned *United States of America, ex rel. Timothy Cleary and the State of New York, ex rel. Timothy Cleary v. Health Quest Systems, Inc., Putnam Hospital Center, Vassar Brothers Hospital d/b/a Vassar Brothers Medical Center, BAF Consultants, LLC, FACS, LLC d/b/a Fishkill Ambulatory Support Services, LLC, and Health Quest Home Care, Inc.*, 16-cv-76 (DNH/DJS), pursuant to the *qui tam* provisions of the FCA, 31

Page **2** of **21**

U.S.C. § 3730(b) ("Health Quest 2"). Cleary alleged that Health Quest and/or PHC violated the FCA by: (a) engaging in a scheme between PHC and BAF Consultants ("BAF"), whose members (two orthopedists named Dr. Joel Buchalter and Dr. Daniel Fauser) also are named Defendants in Health Quest 2 in violation of the AKS and the Stark Law; (b) engaging in a scheme between VBMC and Fishkill Ambulatory Support Services in violation of the AKS and the Stark Law; (c) fraudulently charging for enhanced provider based billing rates; (d) improperly billing home health services; and, (e) improperly using an Ambulatory Patient Group Rate Code to enhance reimbursement rates for certain services. The United States will intervene in Health Quest 2 to the extent that Cleary's complaint alleges a scheme between PHC and BAF in violation of the AKS and the Stark Law,[1] improperly billing home health services, and improper provider based billing.

D.        On November 9, 2016, John Betaudier and Carolyn Carroll filed a *qui tam* action under seal in the United States District Court for the Northern District of New York captioned *United States of America, the State of New York ex rel. John Betaudier and Carolyn Carroll v. Health Quest Medical Practice, P.C. and Health Quest Systems, Inc.*, 1:16-cv-1344 (FJS/TWD), pursuant to the *qui tam* provisions of the FCA, 31 U.S.C. § 3730(b) ("Health Quest 3"). Betaudier and Carroll alleged that Health Quest violated the FCA by: (a) improperly billing well woman examinations ("WWEs"); (b) improperly billing ultrasounds; (c) upcoding evaluation and management services; and, (d) improperly "downcoding" sonogram services to enable billing for services that were otherwise not reimbursable. The United States will intervene in Health Quest 3 to the extent that Betaudier's and Carroll's complaint alleges improper billing for WWEs and ultrasounds.

---

[1] As set forth herein (paragraph G.5), this Settlement Agreement covers only a portion of the allegations concerning the kickback allegations relating to PHC and BAF.

Page **3** of **21**

E. The United States and Health Quest and PHC agree that Health Quest and/or PHC submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE"); Veterans Health Administration Program, 38 U.S.C. §§ 1701-1787 ("VA"), the FEHBP; the Railroad Retirement Medicare Program administered under the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v ("Medicare RR"); and FECA, on behalf of employees of the USPS, administered by the DOL-OWCP. The payers identified in this Paragraph are hereafter referred to as the "Federal Programs."

F. The Health Quest Compliance and Audit Department conducts periodic reviews of coding and billing, to determine whether claims may have been submitted to payors, including Medicare, in error. In connection with those reviews, Health Quest self-disclosed several issues to the New York State Office of the Medicaid Inspector General, and submitted overpayment refunds to Medicare and Medicaid totaling $4,157,165. In addition, in March 2016, PHC submitted a self-disclosure letter to the Government explaining possible violations of the AKS, 42 U.S.C. § 1320a-7b, and physician self-referral statute, 42 U.S.C. § 1395nn ("Stark Law"). The self-disclosed violations resulted from, among other things, PHC's payment to two physicians, Drs. Joel Buchalter and Douglas Fauser, for administrative services that were not supported by sufficient documentation, and for which allegedly one purpose of the payments was remuneration for in-patient and out-patient referrals to PHC. In December 2015, HQHC self-disclosed that from April 1, 2011 through August 1, 2014, it submitted claims for home health services that lacked sufficient medical records to support the claim, including documentation of a face-to-face encounter with a physician, and HQHC did not locate sufficient medical records to support the claim upon retrospective review.

Page **4** of **21**

G.     The United States contends that it has certain civil and common law claims, including claims under the FCA, 31 U.S.C. § 3729, *et seq.*, against Health Quest and PHC for engaging in the conduct set forth in this Paragraph (hereinafter referred to as the "Covered Conduct"). Health Quest and PHC (with regard to PHC's conduct) admits, acknowledges, and accepts responsibility for the following facts:

1.     From April 1, 2009 through June 23, 2015, HQMP and HQUC directly or indirectly submitted claims to the Federal Programs for HQMP's and HQUC's evaluation and management services provided by physicians but did not sufficiently document the services to support the level of service billed such that the level of service billed was at least two levels higher than supported by the medical record.

2.     From January 1, 2014 through June 23, 2015, HQMP submitted claims to Medicare and FEHBP for HQMP's Annual Wellness Visits where each and every element of the service was not sufficiently documented in each patient's medical record.

3.     From April 1, 2009 through June 23, 2015, HQMP and HQUC submitted claims to Medicare for services rendered by mid-level providers, where physician supervision requirements for "incident to" billing were not fully met or sufficiently documented in each patient's medical record.

4.     From June 17, 2011 through August 26, 2011, HQMP submitted claims to Medicare for services purportedly provided by physicians with *locum tenens* arrangements, during which the *locum tenens* billing requirements were not fully met.

5.     From March 1, 2014 through December 31, 2014, PHC submitted allegedly false claims to: (a) Medicare for inpatient and outpatient hospital services referred to PHC by Drs. Buchalter and Fauser, in alleged violation of the Stark Law, and (b) Medicare, TRICARE, and for USPS employees to DOL-OWCP, in alleged violation of the AKS, where Buchalter and Fauser

each had a direct financial relationship with PHC for provision of administrative services and received compensation from PHC that the United States alleges exceeded the fair market value for the services, the performance of which was not supported by sufficient documentation, and where one purpose of the excessive compensation was to induce the above referrals to PHC, in alleged violation of the AKS.

6.      From April 1, 2011 through August 1, 2014, HQHC submitted claims to Medicare for HQHC's home health services that lacked sufficient medical records to support the claim, including documentation of a face-to-face encounter with a physician, and HQHC did not locate sufficient medical records to support the claim upon retrospective review.

7.      Between July 1, 2014 and May 18, 2016, VBMC submitted claims to Medicare for two patients for external-counterpulsation, a therapeutic service performed at an outpatient facility, where VBMC was not permitted to bill for the services pursuant to certain provider-based billing rules.

8.      From March 18, 2010 through February 18, 2016, HQMP submitted claims directly or indirectly to Medicare, Medicaid, Medicare RR, TRICARE, FEHBP, for USPS employees to DOL-OWCP, for HQMP's well woman examinations where the medical documentation did not support the requirements due to documentation that lacked one or more of the visit-required elements.

9.      From March 15, 2010 through October 30, 2015, HQMP submitted claims directly or indirectly to Medicare, Medicaid, Medicare Managed Care, Medicaid Managed Care, TRICARE, VA, FEHBP, for USPS employees to DOL-OWCP for HQMP's sonogram services where medical documentation did not support the sonogram requirements due to documentation lacking one or more of the necessary components as defined by the Current Procedural Terminology requirements.

10.     For each issue identified in Paragraphs G.1-4 and G.6-9, Health Quest, and for the issues identified in Paragraph G.5, PHC, knowingly submitted or caused to be submitted the claims for reimbursement referenced therein.

H.     Relators Folta, Cleary, Carroll and Betaudier claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement.

I.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the claims described above in Paragraphs A-G, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.     Health Quest and PHC shall pay to the United States and the State of New York the total sum of $15,649,960.35, plus interest at a rate of 2.375% per annum from May 25, 2018, and continuing until and including the date of payment to be paid as follows:

a.     Health Quest and PHC shall pay to the United States the sum of $14,754,532.95, plus applicable interest, ("Settlement Amount") no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of New York. $6,459,467.54 of the Settlement Amount shall constitute restitution.

b.     Health Quest shall pay to the State of New York the sum of $895,427.40, plus applicable interest, pursuant to the terms of a settlement agreement that Health Quest has entered into or will enter into with State of New York.

2.     Conditioned upon the United States receiving the Settlement Amount and Relators having provided the United States with an IRS Form 1099 that includes their name, tax

identification or Social Security Number, and their full mailing address,[2] and as soon as feasible after receipt of the Settlement Amount, the United States shall pay by electronic funds transfer:

    a.    $875,546.52 to Relator Folta as his share of the $5,836,976.85 in settlement proceeds being allocated to Health Quest 1;

    b.    $1,893,092.76 to Relator Cleary as his share of the $8,604,967.10 in settlement proceeds being allocated to Health Quest 2; and

    c.    $56,266.02 to Relators Betaudier and Carroll as their share of the $312,589 in settlement proceeds being allocated to Health Quest 3.

    3.    Payments by Health Quest to Relators.

    a.    Relators Folta's, Cleary's and Betaudier's respective claims against Health Quest for reasonable expenses, attorneys' fees and costs under 31 U.S.C. § 3730(d), and all other claims by Relators Folta, Cleary and Betaudier against Health Quest, including claims by Relators Folta and Betaudier under 31 U.S.C. § 3730(h), shall be or already have been addressed by separate agreements between Health Quest and Relators and are not waived or released by this Agreement. The Court dismissed Betaudier's fifth and sixth causes of action against Health Quest with prejudice. *See* Health Quest 3, Dkt. No. 19.

    b.    Health Quest shall pay $58,320.00 to Relator Carroll for reasonable expenses, attorneys' fees and costs, and to resolve Carroll's wrongful termination claim under subsection 3730(h).

    4.    Subject to the exceptions in Paragraph 10 (concerning excluded claims) below, and conditioned upon full payment of the Settlement Amount, the United States releases Health Quest and PHC, from any civil or administrative monetary claim the United States has for the Covered

---

[2] If any of the Relators' respective counsel is a payee, that counsel shall provide their name, tax identification number, and full mailing address prior to the United States making the subject payment.

Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or, the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 10 below, and conditioned upon full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release Health Quest and PHC, together with its direct and indirect subsidiaries, and its successors and assigns, from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud; and, any claims of any nature he/she has on behalf of anyone else relating to the Covered Conduct. Relators Folta, Cleary and Betaudier's release of other claims relating to the Civil Action are addressed by separate agreements with Health Quest and related entities.

6.      In consideration of the obligations of Health Quest in this Agreement and the Corporate Integrity Agreement ("CIA"), entered into between OIG-HHS and Health Quest, and conditioned upon full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Health Quest under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 10 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Health Quest from Medicare, Medicaid, and other Federal health care

programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 10, below.

7.       In consideration of the obligations of Health Quest set forth in this Agreement, and conditioned upon full payment of the Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Health Quest and PHC under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 10 (concerning excluded claims), below.  DHA expressly reserves authority to exclude Health Quest and PHC from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct.  Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 10, below.

8.       In consideration of the obligations of Health Quest in this Agreement, and conditioned upon full payment of the Settlement Amount, OPM agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FEHBP against Health Quest and PHC under 5 U.S.C. § 8902a or 5 C.F.R. Part 890 Subpart J or Part 919 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 10 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a-7(a).  OPM expressly reserves all rights to comply with any statutory obligation to debar Health Quest and PHC from the FEHBP under 5 U.S.C. § 8902a(b) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this Paragraph precludes OPM from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 10, below.

9.      In consideration of the obligations of Health Quest set forth in this Agreement, and conditioned upon full payment of the Settlement Amount, DOL-OWCP agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FECA program against Health Quest and PHC under 20 C.F.R. §§ 10.815 for the Covered Conduct in regard to claims involving the USPS, except as reserved in Paragraph 10 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a 7(a). Nothing in this Paragraph precludes the DOL-OWCP from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 10, below.

10.      Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs and the suspension and debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals;

g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.      Any liability for failure to deliver goods or services due; and,

Page 11 of 21

      i.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

11.      Relators and his/her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement, including the amount of the settlement attributable to the Covered Conduct in their respective *qui tam* action, is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon the United States' payments to Relators (whether directly or through their respective counsel) described in Paragraph 2, Relators and his/her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action. Notwithstanding the releases granted by Relators in this Paragraph, Relator Folta does not release, waive, or discharge his right to claim a higher share of the proceeds of the $5,836,976.85 allocated to the resolution of Health Quest 1 as reflected in the payment to him of $875,546.52.

12.      Health Quest and PHC waives and shall not assert any defenses Health Quest may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13.      Health Quest and PHC fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Health Quest and/or PHC has asserted,

Page **12** of **21**

could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Federal Program or contractor assisting in the administration of the program, or any state payer, related to the Covered Conduct; and Health Quest and PHC agree not to resubmit to any Federal Program (or contractor assisting in the administration of the program) or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15.     Health Quest and PHC agree to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Health Quest and/or PHC, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Health Quest's and/or PHC's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)    the payment Health Quest and PHC make to the United States pursuant to this Agreement and any payments that Health Quest may make to Relator, including costs and attorney's fees; and,

(6)    the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 16.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Health Quest.

b.    <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Health Quest and PHC, and Health Quest and PHC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Health Quest and/or PHC and/or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Health Quest and PHC further agree that within 90 days of the Effective Date of this Agreement each shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid

program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Health Quest and/or PHC or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Health Quest and PHC agree that the United States, at a minimum, shall be entitled to recoup from Health Quest and PHC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Health Quest and/or PHC or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Health Quest or PHC or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Health Quest's and/or PHC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

16.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 (waiver for beneficiaries paragraph), below.

17.     Health Quest and PHC agree that each waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their

parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. Upon receipt of the payment described in Paragraph 1, above, the United States and Relator Folta shall promptly sign and file in Health Quest 1 a Stipulation of Dismissal pursuant to Rule 41(a)(1) dismissing Relator Folta's claims with prejudice and, to the extent released herein, dismissing the United States' claims related to the Covered Conduct set forth above in Paragraphs G.1 through G.4 with prejudice and the remaining claims of the United States without prejudice; the United States and Relator Cleary shall promptly sign and file in Health Quest 2 a Stipulation of Dismissal pursuant to Rule 41(a)(1) dismissing Relator Cleary's claims with prejudice and, to the extent released herein, dismissing the United States' claims related to the Covered Conduct set forth above in Paragraphs G.5 through G.7 with prejudice and the remaining claims of the United States without prejudice; and the United States and Relators Betaudier and Carroll shall promptly sign and file in Health Quest 3 a Stipulation of Dismissal pursuant to Rule 41(a)(1) dismissing Relator Betaudier's and Carroll's claims with prejudice and, to the extent released herein, dismissing the United States' claims relating to the Covered Conduct set forth above in Paragraphs G.8 and G.9 with prejudice and the remaining claims of the United States without prejudice.

19. Except as otherwise provided in this Agreement and in the separate agreements between Health Quest and Relators, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York. For purposes of construing this Agreement, this Agreement

Page 16 of 21

shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22.    Except as provided in paragraphs 3.a, 5 and 19 concerning separate agreements between Relators and Health Quest, this Agreement constitutes the complete agreement among the Parties. This Agreement may not be amended except by written consent of the Parties.

23.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25.    This Agreement is binding on Health Quest's and PHC's successors, transferees, heirs, and assigns.

26.    This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

27.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

REMAINDER OF PAGE INTENTIONALLY BLANK – SIGNATURES BELOW

**THE UNITED STATES OF AMERICA**

DATED: 6/29/18          BY:

BRUCE BERNSTEIN
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

MICHAEL GADARIAN
Assistant United States Attorney
Northern District of New York

DATED: _____     BY:  _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____     BY:  _____

JENNIFER VALDIVISEO
DFEC Deputy Director for Program and System Integrity
Office of Workers' Compensation Programs
United States Department of Labor

DATED: _____     BY:  _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

**THE UNITED STATES OF AMERICA**

DATED: _____    BY:    _____

BRUCE BERNSTEIN
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


_____

MICHAEL GADARIAN
Assistant United States Attorney
Northern District of New York

DATED: 6/29/2018 BY:    _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____    BY:    _____

JENNIFER VALDIVISEO
DFEC Deputy Director for Program and System Integrity
Office of Workers' Compensation Programs
United States Department of Labor


DATED: _____    BY:    _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

## THE UNITED STATES OF AMERICA

DATED: _____     BY:     _____

BRUCE BERNSTEIN
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


_____

MICHAEL GADARIAN
Assistant United States Attorney
Northern District of New York


DATED: _____     BY:     _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _6-27-18_     BY:     _____

JENNIFER VALDIVISEO
DFEC Deputy Director for Program and System Integrity
Office of Workers' Compensation Programs
United States Department of Labor


DATED: _____     BY:     _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

Page **18** of 21

**THE UNITED STATES OF AMERICA**

DATED: _____      BY:  _____

BRUCE BERNSTEIN
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


_____
MICHAEL GADARIAN
Assistant United States Attorney
Northern District of New York


DATED: _____      BY:  _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____      BY:  _____

JENNIFER VALDIVISEO
DFEC Deputy Director for Program and System Integrity
Office of Workers' Compensation Programs
United States Department of Labor


DATED: 06/28/2018     BY:  BLEY.PAUL.NICHOL  Digitally signed by
                           AS.1099873821     BLEY.PAUL.NICHOLAS.1099873821
                                             Date: 2018.06.28 14:35:50 -04'00'
                      for  LEIGH A. BRADLEY
                           General Counsel
                           Defense Health Agency
                           United States Department of Defense

Page **18** of **21**

DATED: 6/27/2018      BY: _____

Silvia V. Pulley   Cynthia Butler, Deputy Assistant Director
United States Office of Personnel Management

Page **19** of **21**

**DEFENDANTS**

**Health Quest Systems, Inc.**

DATED: 6/29/18    BY: _____
               Robert Friedberg
               Chief Executive Officer

**Health Quest Medical Practice, P.C.**
**Health Quest Urgent Medical Care Practice, P.C.**

DATED: 6/27/18    BY: _____
               Glenn A. Loomis, MD
               Chief Medical Operations Officer, Health Quest
               President, Health Quest Medical Practice, PC

**Putnam Hospital Center**

DATED: 6/27/18    BY: _____
               Peter Kelly
               President
               Putnam Hospital Center

DATED: 6/28/18    BY: _____
               Lisa M. Noller
               Foley & Lardner LLP
               Counsel for Health Quest and Putnam Hospital Center



**RELATORS**

Relator Gregory Folts

DATED: 9/25/18          BY: _____
                            Gregory Folts

DATED: 9/26/18          BY: _____
                            Timothy J. McIntosh
                            McIntosh Law
                            Counsel for Relator Gregory Folts

Relator Timothy Cleary

DATED: _____          BY: _____
                            Timothy Cleary

DATED: _____          BY: _____
                            Larry S. Martin
                            Yankwitt LLP
                            Counsel for Relator Timothy Cleary

Relator John Batzseller

DATED: _____          BY: _____
                            John Batzseller

Relator Carolyn Carroll

DATED: _____          BY: _____
                            Carolyn Carroll

DATED: _____          BY: _____
                            Richard B. Amsterior
                            Law Office of Richard B. Amsterior
                            Counsel for Relators John Batzseller and Carolyn Carroll

**RELATORS**

**Relator Gregory Folta**

DATED: _____   BY: _____
                        Gregory Folta

DATED: _____   BY: _____
                        Timothy J. McInnis
                        McInnis Law
                        Counsel for Relator Gregory Folta

**Relator Timothy Cleary**

DATED: 6/25/2018   BY: _____
                        Timothy Cleary

DATED: 6/25/2018   BY: _____
                        Kathy S. Marks
                        Yankwitt LLP
                        Counsel for Relator Timothy Cleary

**Relator John Betaudier**

DATED: _____   BY: _____
                        John Betaudier

**Relator Carolyn Carroll**

DATED: _____   BY: _____
                        Carolyn Carroll

DATED: _____   BY: _____
                        Richard B. Ancowitz
                        Law Office of Richard B. Ancowitz
                        Counsel for Relators John Betaudier and Carolyn Carroll

Page 21 of 21

**RELATORS**

**Relator Gregory Folta**

DATED: _____     BY: _____

Gregory Folta


DATED: _____     BY: _____

Timothy J. McInnis

McInnis Law

Counsel for Relator Gregory Folta


**Relator Timothy Cleary**

DATED: _____     BY: _____

Timothy Cleary


DATED: _____     BY: _____

Kathy S. Marks

Yankwitt LLP

Counsel for Relator Timothy Cleary


**Relator John Betaudier**

DATED: _____     BY: _John Betaudier_

John Betaudier


**Relator Carolyn Carroll**

DATED: _____     BY: _____

Carolyn Carroll


DATED: _____     BY: _____

Richard B. Ancowitz

Law Office of Richard B. Ancowitz

Counsel for Relators John Betaudier and Carolyn Carroll


Page **21** of **21**

**RELATORS**

**Relator Gregory Folta**

DATED: _____     BY: _____
                          Gregory Folta


DATED: _____     BY: _____
                          Timothy J. McInnis
                          McInnis Law
                          Counsel for Relator Gregory Folta

**Relator Timothy Cleary**

DATED: _____     BY: _____
                          Timothy Cleary


DATED: _____     BY: _____
                          Kathy S. Marks
                          Yankwitt LLP
                          Counsel for Relator Timothy Cleary

**Relator John Betaudier**

DATED: _____     BY: _____
                          John Betaudier


**Relator Carolyn Carroll**

DATED: _____     BY: _____
                          Carolyn Carroll


DATED: _____     BY: _____
                          Richard B. Ancowitz
                          Law Office of Richard B. Ancowitz
                          Counsel for Relators John Betaudier and Carolyn Carroll


Page 21 of 21